FILED
September 19, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003777318

THE SUNTAG LAW FIRM
A Professional Corporation
DANA A. SUNTAG (California State Bar No. 125127)
LORIS L. BAKKEN (California State Bar No. 215033)
The Kress Building
20 North Sutter Street, Fourth Floor
Stockton, California 95202
Telephone: (209) 943-2004
Facsimile: (209) 943-0905

Attorneys for Chapter 7 Trustee
GARY R. FARRAR

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

IN RE:

EUREKA FABRICATION, INC.,

    Debtor.

NO: 11-38738-B-7

DC No.: SLF 3

**MOTION FOR AUTHORIZATION TO SELL THE ESTATE'S INTEREST IN PERSONAL PROPERTY FREE AND CLEAR OF LIENS**

**No Hearing Set; if concurrently filed application for order shortening time is granted, the hearing on this motion will be:**

Date: September 27, 2011
Time: 9:32 a.m.
Place: Department B
The Honorable Thomas C. Holman

Chapter 7 Trustee Gary R. Farrar respectfully moves for authorization to sell the estate's interest in various items of the Debtor's personal property (described with particularity in Schedule A to Exhibit A to the Farrar Declaration) (the "Sale Assets"), which are located at the Debtor's facility at 4113 Gold River Lane, Stockton, California 95213 (the "Facility"), free and clear of liens.

Under the proposed sale, Machinery Network Auctions, a California corporation, ("MNA") and American Auctioneers Group, Inc., a California corporation, will buy all of the estate's interest in the Sale Assets for $620,000.00.

The Trustee believes the sale of the Sale Assets is in the best interests of the creditors and this Court should approve it pursuant to Bankruptcy Code Section 363(b).

The Trustee represents the following:

1. On July 30, 2011, the Debtor filed this case. Gary R. Farrar was appointed Chapter 7 Trustee.

2. The Debtor was in the business of precision sheet metal manufacturing. The Debtor scheduled various assets, including deposit accounts, accounts receivables, equipment, and completed product.

3. The Debtor scheduled debt to its landlord, Arch Road Group, a California general partnership (the "Landlord"), for accrued and unpaid prepetition rent on the Facility, in the amount of $71,000.[1] (The Landlord claims that the actual amount owing as of the date of the bankruptcy filing is $71,237.19. (Farrar Decl., ¶ 5).)

4. The Debtor also scheduled debt to its lender, Westamerica Bank ("Westamerica"), in the amount of $660,406.47, secured by a blanket financing statement that covers the Sale Assets. (Farrar Decl., ¶ 6; Ex. B).

---

1      The Debtor incorrectly identified its landlord as "Fite Development" and incorrectly scheduled the debt as secured debt. The debt to the Landlord (Arch Road Group, not Fite Development) is unsecured. (Farrar Decl., ¶ 4, n.1).

MOTION FOR AUTHORIZATION
TO SELL THE ESTATE'S      2
INTEREST IN PERSONAL PROPERTY

5. The Sale Assets have remained at the Facility since the filing of this case and, as a result, the bankruptcy estate has incurred, and is incurring, administrative expenses to the Landlord of $23,745.73 per month in post-petition rent based on the prepetition lease between the Landlord and the Debtor. (Farrar Decl. ¶ 7).

6. The Sale Assets are property of the bankruptcy estate. (Farrar Decl. ¶ 8).

7. Mr. Farrar wishes to liquidate the Sale Assets and obtain the maximum value for the estate; however, the Sale Assets are subject to Westamerica's secured interest. Moreover, the Sale Assets are physically secured in various respects to the Debtor's facility, and because of the nature of the assets (including their large size), it would be expensive to move the Sale Assets. Therefore, the estate is incurring administrative expenses in the form of rent to the Landlord. (Farrar Decl., ¶ 9).

8. Mr. Farrar contacted numerous auctioneers and also other companies in the same industry as the Debtor that might be interested in buying the Sale Assets. Among other companies, Mr. Farrar contacted Ernst & Associates Auctioneers, Inc.; West Auctions; Great American Group; Ashman Company Auctioneers & Appraisers ("Ashman"); and MNA. (Farrar Decl., ¶ 10).

9. On September 1, 2011, MNA made a written offer to buy the Sale Assets for $462,500. On the same day, Ashman made an offer to buy the Sale Assets for $510,000. Mr. Farrar then conducted further negotiations with Ashman and MNA, essentially acting as a private auctioneer to try to obtain the highest bid from them. Each time Mr. Farrar presented one company with the other company's latest offer, he was able to obtain a higher offer from the other company. (Farrar Decl., ¶ 11).

10. The other companies that Mr. Farrar contacted did not make offers as high as Ashman or MNA. (Farrar Decl., ¶ 12).

11. As a result of this process, on September 13, 2011, MNA made the high bid, offering to buy the Sale Assets for $620,000. Ashman decided not to make a higher bid. Therefore, at this time, MNA is the high bidder. (Farrar Decl., ¶ 13).[1]

12. Following the Auctioneer's purchase of the Sale Assets, it intends to offer the Sale Assets for sale, at public auction, *in situ* at the Facility. (Farrar Decl. ¶ 14).

13. At the same time as Mr. Farrar was negotiating with the auction companies, he also entered into negotiations with the Landlord, to seek a reduction of its administrative rent claim, and with Westamerica, to obtain Westamerica's agreement to the sale free and clear of its lien with a "carveout" (since Westamerica has a perfected lien that exceeds the value of the Sale Assets) for the bankruptcy estate, including the Landlord's claims. (Farrar Decl., ¶ 15).

14. As a result of these negotiations, Westamerica agreed to allow the Sale Assets to be sold free and clear of its lien with $45,000 going to the Landlord in satisfaction of its administrative rent claim and an additional $45,000 going to the bankruptcy estate. (Farrar Decl., ¶ 16).

15. Mr. Farrar, the Auctioneer, Westamerica Bank, and the Landlord have signed an agreement consistent with these terms. (Farrar Decl., ¶ 17, Ex. A). The principal terms contained in the agreement are as follows:

    a. The Auctioneer will purchase the Sale Assets, free and clear of liens, for $620,000.00, and will make payment to Mr. Farrar within three business days after this Court enters its order approving the Agreement (the "Sales Price").

    b. If, at the hearing on court approval of this Agreement, a third party outbids the Auctioneer and becomes the successful, court approved, buyer of the Sale Assets in an amount that is at least $10,000 more than the Sales Price, and that party timely satisfies its

---

[1] MNA is structuring its purchase of the Sale Assets so that the actual buyer is a joint venture between it and American Auctioneers Group, Inc. (Ex. A). The joint venture is referred to here and in the agreement as "the Auctioneer."

payment obligations in full, then the Auctioneer shall be entitled to a breakup fee from the bankruptcy estate of $10,000 to reimburse theAuctioneer for expenses incurred.[1] Mr. Farrar is amenable to overbidding at the hearing on terms that are agreeable to this Court, with the first overbid to be in an amount at least $10,000 more than the Sales Price.

   c. Within two business days after Mr. Farrar receives the Sales Price, he will deliver to Westamerica, in partial payment of Westamerica's secured liens on the Sale Assets, the Sales Price minus the following two reductions: (i) $45,000 (which the Trustee shall pay to the Landlord, as described in subparagraph e, below, in satisfaction of the Landlord's administrative rent claim) (the "Agreed-on Administrative Rent"); and (ii) $45,000 (which the Trustee shall use to administer the bankruptcy estate) (collectively, the "Estate Carveout"), for a total payment to Westamerica of approximately $530,000. In exchange for such payment, Westamerica is consenting to the Bankruptcy estate's sale of the Sale Assets to MNA free and clear of all of Westamerica's liens.

   d. On October 20, 2011, the Auctioneer will offer, for sale at public auction, each of the Sale Assets at the Facility (the "Auction"). The Landlord will grant the Auctioneer reasonable use of the Facility for the Auctioneer's use in preparing the Sale Assets for sale, for the Auction, and for a period of 10 business days after the Auction. The Auctioneer will ensure that all of the Sale Assets are removed from the Facility by the close of business on October 31, 2011.

   e. The Landlord represents that, as of October 31, 2011, the amount of administrative (post-petition) rent that will have accrued will be $71,237.19. In consideration for the agreement of Mr. Farrar not to object to the Landlord's prepetition rent claim and payment to the Landlord of the Agreed-On Administrative Rent of $45,000.00 payable within 10 days after

---

1 Mr. Farrar believes this is warranted. As a result of the bidding between MNA and Ashman, Mr. Farrar was able to increase the purchase price by $157,500.00. (Farrar Decl., ¶ 18).

the Bankruptcy Court enters its order approving the Agreement, the Landlord has agreed not to file a claim for administrative rent or expenses; the only claim it will be permitted to file on account of rent is for prepetition rent in an amount not to exceed $71,237.19.

        f.     Mr. Farrar will deliver to Westamerica any and all other assets he has recovered on account of the Debtor's deposit accounts or accounts receivables (all of which are secured by Westamerica's blanket lien), and Mr. Farrar will not pursue any further recovery from the Debtor's deposit accounts or accounts receivables. At Westamerica's request, Mr. Farrar will sign a stipulation for relief from the automatic stay to allow Westamerica to pursue its claim of an interest in the assets described in this paragraph.

(the "Agreement") (collectively, the "Sale"). (Farrar Decl. ¶ 17, Ex. A).

16.    The Sale is conditional on Bankruptcy Court approval of this motion and is subject to overbidding at the hearing on this Motion. (Farrar Decl., ¶ 18).

17.    Bankruptcy Code Section 363(b) provides that a trustee, after notice and a hearing, may sell property of the bankruptcy estate other than in the ordinary course of business.

18.    Bankruptcy Code Section 363(f)(2) provides that a trustee may sell property under 363(b) or (c) free and clear of any interest in such property of an entity other than the estate if such entity consents.

19.    Westamerica and Landlord each consent to the sale of the Sale Assets free and clear of liens and each has signed a declaration stating such consent. Westamerica and Landlord are each concurrently filing a Declaration of Consent. (Farrar Decl., ¶ 19).

20.    Mr. Farrar has inspected the Sale Assets and conducted substantial due diligence regarding their value in offering the Sale Assets to numerous auction companies and engaging in negotiations with them, as described above. Based on this investigation, he believes the Sale is in the best interests of creditors. (Farrar Decl., ¶ 20).

| | |
|---|---|
| 1 | 21.     The Agreement states that the parties to the Agreement agree to waive the 14 day stay of the effectiveness of any order granting this motion and the Trustee requests that the Court authorize such waiver. (Farrar Decl., ¶ 21). |

21.     The Agreement states that the parties to the Agreement agree to waive the 14 day stay of the effectiveness of any order granting this motion and the Trustee requests that the Court authorize such waiver. (Farrar Decl., ¶ 21).

WHEREFORE, Mr. Farrar respectfully requests that the Court grant this motion, waive the 14 day stay of the effectiveness of the order granting this motion, and that it grant such further and other relief as may be just and proper.

Dated: September 19, 2011

THE SUNTAG LAW FIRM
A Professional Corporation

By: /s/ Dana A. Suntag
DANA A. SUNTAG
Attorneys for Chapter 7 Trustee
GARY R. FARRAR